O’Neaed, J.
The first part of this case relates to the appeal on the part of the plaintiff. He contends that he is not liable for the price of a horse sold by him, as administrator, to a man of the name of M’Sherry. The facts appear to be, that at the sale of his intestate’s estate, the plaintiff sold the horse for seventy dollars on the usual term of note and security : the purchaser, without complying, took off the horse without the plaintiff’s knowledge; he pursued M’Sherry, and took from him anote on one Eccles, who was then, and for a year afterwards, solvent: the note was for more than the price of the horse, and the plaintiff paid M’Sherry the difference.
From this statement, it is apparent that the note of Eccles would not be regarded as the assets of the estate ; it was received in satisfaction, it is true, of the price of the horse, but the receipt of it was the act of the administrator outside of his duty as such. If loss has ensued, it must fall on him. For he, and not his intestate’s estate, must be regarded as the owner of Eccles’ note. It was his duty, as administrator, to see that the terms of the sale were complied with, by note and security being given for the property, or to resell it. If he chose to take anything else in satisfaction of the purchase, he made it his own, and became answerable to the estate — if the parties in interest elected so to consider it, and so to deal with him. But the fact that he paid more for the note than the price at which the horse was sold, shows that the acquisition of the note was his own speculation. We concur, therefore, with the Chancellor, in sustaining the exception to the Commissioner’s report in this respect.
The second part of the case relates to Hoyt’s execution. It appears that in the time of M’Creary it had been levied by Mr. Sheriff ^Kennedy of Chester, on a slave, who, if he had been sold, would L 99 have sold for a sum greater than that due on the execution ; but he was left by the sheriff with M’Creary, on his giving bond to Mr. Kennedy, as an individual, to deliver the said slave for sale. The slave was carried out of the State by M’Creary, or by his consent. Six years after the levy lie was brought back and delivered to Mr. Kennedy, who entered a receipt "upon the bond for him as delivered by the security : he was not sold, but permitted by Mr.-Kennedy, who had been out of office for some time, to return to his owner out of the State. At the time of the levy, and for several years after, and indeed until paid in this case, there were executions against M’Creary, in the sheriff’s office of Chester District, senior to that of Hoyt’s, to an amount much beyond the value of the slave,
A levy is, in legal contemplation, satisfaction of a fi. fa., that is, it is presumptive evidence that satisfaction may result or has resulted from it. But as soon as it is shown how the levy has been disposed of, and that satisfaction has not and could not have resulted from the levy, the legal presumption is rebutted, and the execution may be again levied, if it has not lost its active energy : and if it has, the judgment may be revived by sci. fa., or sued upon in debt.
*82 In this case, the plaintiff in execution, Hoyt, never could have obtained satisfaction from the levy ; for, if the slave had been sold, the elder executions must have been first satisfied before he could have received anything. They would have taken up a larger sum than the value of the slave. If he had sued the sheriff for not selling the negro, he would have been answered as the Court answered the plaintiff in the case of Gaines v. Downs, State Rep. 12, that “he (the sheriff) was only liable to them who were injured by his neglect.” The senior execution creditors were the persons in this case, as in that, who had the right to complain. We are therefore satisfied with the Chancellor’s decree in this respect.
It is ordered and decreed, that the Chancellor’s decrees, upon these two parts of the same case, be affirmed.
Harper and Johnson, Js., concurred.